**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| E.M. and K.M., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 25 C 14849 |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| Blue Cross and Blue Shield of Illinois, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Defendant's motion to dismiss [13] is denied. A joint status report is due by 10/26/26. A status hearing is set for 10/28/26 at 9:30 am.

## STATEMENT

This is a suit for employee health benefits under the Employee Retirement Income Security Act ("ERISA"), *see* 29 U.S.C. § 1132(a). Plaintiff E.M. was a participant in an ERISA-governed employee welfare benefits plan administered by Defendant, Blue Cross and Blue Shield of Illinois. Plaintiff K.M., E.M.'s child, was enrolled as a beneficiary of the plan. Suffering from mental-health and substance-abuse problems, K.M. received approximately 10 weeks of treatment at Open Sky Wilderness Therapy ("Open Sky"). Defendant denied full coverage for this treatment, requiring Plaintiffs to pay $48,000 for K.M.'s stay.

The plan covered "health care expenses", including those for "treatment of a Mental Illness and/or Substance Use Disorder," under certain conditions. (Summary Plan Description Certificate ("SPD") at 23, 63, Dkt. No. 14-1 at 38.) The SPD describes the conditions for coverage of "Mental Illness and/or Substance Use Disorder Services" as follows:

> Benefits for all of the Covered Services described in this Certificate are available for the diagnosis and/or treatment of a Mental Illness and/or Substance Use Disorder. Inpatient benefits for these Covered Services will also be provided for the diagnosis and/or treatment of Inpatient Mental Illness in a Residential Treatment Center. Treatment of a Mental Illness or Substance Use Disorder is eligible when rendered by a Behavioral Health Practitioner working within the scope of their license.

(*Id.* at 63.) A "Covered Service" is any "service or supply specified in [the SPD] for which benefits will be provided." (*Id.* at 8.) "Residential Treatment Center" is defined as follows:

> [A] facility setting offering a defined course of therapeutic intervention and special programming in a controlled environment which also offers a degree of security,

> supervision, structure and is licensed by the appropriate state and local authority to provide such service. It does not include half-way houses, supervised living, group homes, wilderness programs, boarding houses or other facilities that provide primarily a supportive environment and address long-term social needs, even if counseling is provided in such facilities. Patients are medically monitored with 24 hour medical availability and 24 hour onsite nursing service for patients with Mental Illness and/or Substance Use Disorders.

(*Id.* at 17.) A "Behavioral Health Practitioner" is a "Physician or Professional Provider who is duly licensed to render Covered Services for Mental Illness or Substance Use Disorder, and is operating within the scope of such license." (*Id.* at 5.)

Strangely, the SPD contains two definitions for "Professional Provider." The first states simply, "SEE DEFINITION OF PROVIDER." (*Id.* at 15.) The definition of "Provider" is "any health care facility (for example, a Hospital or Skilled Nursing Facility) or person (for example, a Physician or Dentist) or entity duly licensed to render Covered Services to participants in the BlueChoice Preferred PPOSM benefit program, and operating within the scope of such license." (*Id.* at 15.) At the bottom of the same page, however, is the second definition of "Professional Provider," which is "a Physician, Dentist, Podiatrist, Psychologist, Chiropractor, Optometrist, Clinical Social Worker or any Provider designated by Blue Cross and Blue Shield of Illinois or another Blue Cross and/or Blue Shield Plan to provide Covered Services to participants in the BlueChoice Preferred PPOSM benefit program at the time Covered Services are rendered." (*Id.*)

The plan explicitly excludes "[b]ehavioral health services provided at behavioral modification facilities, boot camps, emotional group academies, military schools, therapeutic boarding schools, *wilderness programs*, halfway houses and group homes, *except for Covered Services provided by an appropriate Provider as defined in this Certificate*." (*Id.* at 89 (emphasis added).) As explained in Defendant's May 12, 2023 letter, Plaintiffs allege, this exclusion was the basis for Defendant's denial of coverage for K.M.'s Open Sky stay. (Compl. ¶¶ 41-42, Dkt. No. 1.)

Plaintiffs filed this suit to recover the costs of K.M.'s stay at Open Sky and for other appropriate relief. Their complaint asserts two claims. The first is for recovery of allegedly wrongfully denied benefits under ERISA § 502(a)(1)(B), *see* 29 U.S.C. § 1132(a)(1)(B). The second is for equitable relief under ERISA § 502(a)(3), *see* 29 U.S.C. 1132(a)(3), based on Defendant's alleged violation of the Mental Health Parity and Addiction Equity Act ("Parity Act"), 29 U.S.C. § 1185a. Defendant has moved to dismiss for failure to state a claim.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether the complaint states a claim on which relief may be granted. *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). To state a claim, a complaint must "give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555; that is, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court must "construe the complaint in the light most favorable to plaintiff, accept all well-pleaded facts as true, and draw reasonable inferences in plaintiff's favor." *Taha v. Int'l Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020). "A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

## I. Recovery of Benefits

ERISA § 502 provides a cause of action for a participant or beneficiary of an ERISA plan "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B). Defendant argues that Plaintiff's claim for recovery of benefits must be dismissed because the plan's "behavioral health services" exclusion plainly excludes coverage for "wilderness programs."

Although Defendant acknowledges that the exclusion contains an exception for "Covered Services provided by an appropriate Provider," it argues that Open Sky cannot be considered a "professional Provider of Behavioral Health Services" because the Plan's definition of Professional Provider "is limited solely to professional practitioners (*e.g.*, "Physician, Dentist, Podiatrist" *etc.*) and does not include facility providers like Open Sky." (*See* Mem. in Supp. of Mot. to Dismiss at 7-8, Dkt. No. 14 (citing SPD at 15).) It is not clear why Defendant seems to be importing the term "Professional Provider" into the exception. The exception applies to "Covered Services provided by an appropriate Provider"; the term "Professional Provider" does not appear there. The definition of "Provider" is broad, and, as stated above, it includes "any health care facility" or "entity" that renders covered services (SPD at 15); it is not limited to individual professionals.

Based on the reply brief, it seems that what Defendant means to argue is that the exception does not apply because K.M.'s stay at Open Sky did not provide "Covered Services" for which benefits are available. To provide "Covered Services" for treatment of "Mental Illness and/or Substance Use," Defendant argues, Open Sky must qualify as a "Residential Treatment Center" (hereafter, "RTC") or a "Behavioral Health Practitioner." (*See* SPD at 63.) Defendant contends that Open Sky does not qualify as either.

Plaintiffs appeared to disclaim any contention that Open Sky qualifies as an RTC in their administrative appeal (Mem. in Supp. of Mot. to Dismiss, Ex. 4 at 5-6, Dkt. No. 14-1 at 172-73), but they argue in their response brief that Open Sky does qualify as an RTC. According to Defendant, Open Sky is not an RTC because the definition of RTC (SPD at 17) explicitly excludes "wilderness programs"—separately from the "behavioral health services" exclusion discussed above (SPD at 89)—and it would be nonsensical to construe the plan to exclude coverage for "wilderness programs," but permit an exception for a place that calls itself "Open Sky Wilderness Therapy"; such an exception, Defendant argues, would swallow the exclusion. *See James D. v. Health Care Serv. Corp.*, No. 1:25-CV-03681, 2026 WL 891868, at *2 (N.D. Ill. Mar. 31, 2026)

("[W]ithout some explanatory factual allegations, it defies reason to suggest that a program named "Wingate Wilderness Therapy" offers a behavioral health service that is not a "wilderness program.").

The Court is not convinced by Defendant's argument because it does not fully account for what appears to be a proviso to the exclusion of "wilderness programs" in the definition of RTC. The definition also excludes "other facilities that provide primarily a supportive environment and address long-term social needs, even if counseling is provided in such facilities." (SPD at 17.) The import seems to be that, if a facility provides care with a high "degree of security, supervision [and] structure," as might be required for issues serious enough to require urgent attention, as opposed to a merely "supportive environment" to address "long-term social needs" (*id.*), then it is not subject to the exclusion.

Plaintiffs allege that K.M. received "intensive mental health treatment" (Compl. ¶ 24) at Open Sky for "severe" substance abuse and mental health disorders, including anxiety and depression. (Pls.' Resp. in Opp'n at 5, Dkt. No. 18.) There is little other information before the Court at this early stage, except that Open Sky generally provides an "intermediate" level of care. (Compl. ¶ 22.) Defendant cites certain other facts, including the use of certain revenue codes in attempts to bill Defendant for K.M.'s Open Sky stay, but the Court lacks the factual context it would need to be able to ascribe any particular significance to these codes. Assuming the truth of the facts Plaintiffs have alleged, it is at least plausible that the treatment K.M. received at Open Sky exceeded a level that could properly be described as "primarily [providing] a supportive environment and address[ing] long-term social needs." *See A.H. by & through G.H. v. Microsoft Corp. Welfare Plan*, No. C17-1889, 2018 WL 2684387, at *3-4 (W.D. Wash. June 5, 2018) (denying motion to dismiss recovery-of-benefits claim based on a similar "carve-out" to a "wilderness program" exclusion"); *see also Marino v. Blue Cross & Blue Shield of Fla., Inc.*, No. 17-22886-CIV, 2018 WL 3697506, at *4 (S.D. Fla. Apr. 2, 2018) ("The factual content of the Amended Complaint describes the benefits covered by the Plan, the beneficiaries under the Plan, the services provided under the Plan, . . . and the alleged breach of the Plan[, s]o . . . Defendant cannot persuasively claim that . . . Plaintiff failed to state a plausible claim for relief."). Issues such as whether the treatment K.M. received exceeded a merely "supportive" level require further factual development and therefore preclude dismissal at the pleading stage. *See Taylor v. BW Wings Mgmt., LLC*, No. 1:22-CV-0106, 2023 WL 6847030, at *3 (N.D. Ind. Oct. 17, 2023) ("Plaintiffs need not prove their entitlement to benefits in their . . . Complaint.") (citing *Carlson v. Northrop Grumman Corp.*, No. 13 C 2635, 2014 WL 1299000, at *4 (N.D. Ill. Mar. 31, 2014)); *Carlson*, 2014 WL 1299000, at *3; *Brian W. v. Health Care Serv. Corp.*, No. 24 CV 2168, 2025 WL 306365, at *3 (N.D. Ill. Jan. 27, 2025).

As for whether Open Sky is a "Behavioral Health Practitioner," Defendant contends that the answer is no because Open Sky is not a "Professional Provider," which, Defendant argues, can only be a professional individual. But the SPD appears to be ambiguous on this point: there are two definitions of "Professional Provider," and one of them, by reference to the definition of Provider, explicitly provides that a "health care facility" or "entity" qualifies. The parties do not squarely address this discrepancy in the briefing. Given the ambiguity, Plaintiff's claim is at least plausible. *Carlson*, 2014 WL 1299000, at *3; *see Price v. Sherwin-Williams Co. Grp. Life Ins. Plan*, No. 06-1040, 2008 WL 4952584, at *5 (S.D. Ill. Nov. 18, 2008) (citing *Schwartz v.*

*Prudential Ins. Co. of Am.*, 450 F.3d 697, 699 (7th Cir. 2006)) ("[S]ince the ERISA plan is a contract, like a[ny] contract, all ambiguities are construed against the insurer."); *Princeton v. Am. Fam. Mut. Ins. Co. S.I.*, No. 25-CV-1215, 2026 WL 396237, at *3 (E.D. Wis. Feb. 12, 2026) (citing *Dawson v. Gen. Motors Corp.*, 977 F.2d 369, 373 (7th Cir. 1992)) ("A motion to dismiss is not appropriate if the contract is facially ambiguous.")

For all these reasons, the motion to dismiss is denied as to Plaintiff's claim for recovery of benefits under ERISA § 502.

## II. Parity Act

"The Parity Act requires that when a group health plan provides coverage for both medical benefits and mental health and substance abuse benefits, the Plan must ensure treatment limitations on mental health benefits are 'no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan.'" *Allison B. v. Bluecross Blueshield of Illinois*, No. 24-CV-06162, 2026 WL 497246, at *3 (N.D. Ill. Feb. 20, 2026) (quoting 29 U.S.C. § 1185a(a)(3)(A)(ii)). Under the Parity Act's implementing regulations, "any nonquantitative limitation"—which the parties agree is the kind at issue here—"with respect to mental health or substance use disorder benefits in any classification" must not be "more restrictive, as written or in operation, than the predominant nonquantitative treatment limitation that applies to substantially all medical/surgical benefits in the same classification." 29 C.F.R. § 2590.712(c)(4). Nonquantitative treatment limitations include restrictions based on "geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for services provided under the plan or coverage." 29 C.F.R. § 2590.712(c)(4)(ii)(H).

To identify a Parity Act violation, numerous courts in this district "have adopted the following test: Plaintiffs must show that (1) the relevant group health plan is subject to the Parity Act; (2) the plan provides both medical/surgical benefits and mental health or substance use disorder benefits; (3) the plan includes a treatment limitation for mental health or substance use disorder benefits that is more restrictive than medical/surgical benefits; and (4) the mental health or substance use disorder benefit being limited is in the same classification as the medical/surgical benefit to which it is being compared." *Brian W.*, 2025 WL 306365, at *6.

Plaintiff argues that Defendant's denial of coverage violated the Parity Act, to the extent it was based on the "behavioral health services" exclusion for "wilderness programs," because it imposed a restriction based on "geographic location" or "facility type" that does not apply to comparable medical/surgical benefits. *See Allison B.*, 2026 WL 497246, at *6; *C.M. v. Health Care Serv. Corp.*, No. 24-CV-02122, 2025 WL 933847, at *4 (N.D. Ill. Mar. 27, 2025).

Defendant argues that, even if the "wilderness programs" exclusion appears only in relation to "behavioral health services," *i.e.*, mental health or substance abuse treatment benefits, it does not follow that there is no comparable limitation on medical/surgical benefits. Defendant contends that no language in the plan would permit any "analogous alternative-setting medical/surgical services, such as camps or programs for weight-loss, diabetes, childhood cancer, or traumatic brain injuries." (Mem. in Supp. of Mot. to Dismiss at 14.) Although such services may not be specifically excluded from coverage, neither does any language in the plan bring them within the plan's

coverage, so they fall within a general exclusion for "services or supplies that are not specifically mentioned." (SPD at 87.) Further, Defendant argues, the Plan's exclusion of coverage for wilderness programs that "provide primarily a supportive environment and address long-term social needs" is of a piece with its exclusion of coverage for "Custodial Care" provided by "Skilled Nursing" facilities—the medical/surgical equivalent of RTCs—where such care is "primarily for personal comfort or convenience." (Mem. in Supp. of Mot. to Dismiss at 14.)

These arguments are strained, and they do not persuade the Court that dismissal is appropriate. It is inescapable that the plan language regarding wilderness programs, RTCs, etc., is substantially different from the plan language regarding skilled nursing, custodial care, etc. Plaintiffs' complaint plausibly alleges "that [Defendant] invoked the wilderness-programs exclusion to deny coverage for services [K.M.] received at an intermediate mental health facility and that no similar restriction applies to analogous medical or surgical services—namely, services provided at skilled nursing facilities." *See Stephanie R. v. Blue Cross & Blue Shield of Illinois*, 815 F. Supp. 3d 809, 817 (N.D. Ill. 2025). Further, Plaintiffs "adequately state a Parity Act claim by alleging that Defendants have denied coverage for [K.M.'s] mental health and substance abuse disorder treatment based on the fact that [Open Sky] provided those services in an outdoor environment," although the plan contains no similar exclusion for medical/surgical care "based on geographic location [or] facility type." *Id.* at 818. Several other courts have similarly concluded that these different plan provisions establish different limitations. *See Gallagher v. Empire HealthChoice Assurance, Inc.*, 339 F. Supp. 3d 248, 258 (S.D.N.Y. 2018) ("At least at the motion to dismiss stage, the relevant comparison is not whether benefits for wilderness therapy are available for medical/surgical patients, but rather whether the Plan has chosen to provide benefits for skilled nursing facilities and rehabilitation centers for medical/surgical patients, but chosen to deny benefits to those with mental health conditions who seek coverage for a residential treatment center offering wilderness therapy."); *Allison B.*, 2026 WL 497246, at *6; *C.M.*, 2025 WL 933847, at *4; *see also Brian W.*, 2025 WL 306365, at *6; *M.P. v. BlueCross BlueShield of Illinois*, No. 24-CV-02599, 2026 WL 2927715, at *2-4 (N.D. Ill. Sept. 29, 2026). The Court is persuaded to follow these decisions, at least at this early stage, while the Court still lacks the context that the full factual record will provide.

For the foregoing reasons, Defendant's motion to dismiss is denied.

**SO ORDERED.** **ENTERED: October 19, 2026**

**HON. JORGE ALONSO**
**United States District Judge**